IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SHANNON WATTS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RIVAREL LLC, *d/b/a Ashley River Apartments*;)<br>HAWTHORNE RESIDENTIAL PARTNERS, )<br>LLC; DANIEL BUCKLEY, *Individually and* )<br>*as Employee/Agent of Ashley River Apartments*; )<br>and LINDA STEINAWAY, *Individually and* )<br>*as Employee/Agent of Ashley River Apartments*, )<br>)<br>Defendants. )<br>_____) | No. 2:24-cv-03804-DCN<br><br>**ORDER** |

This matter is before the court on defendants Daniel Buckley ("Buckley") and Linda Steinaway's ("Steinaway") motion to dismiss, ECF No. 6, and on plaintiff Shannon Watts's ("Watts") motion to remand, ECF No. 9. For the reasons set forth below, the court grants the motion to remand and finds as moot the motion to dismiss.

**I.  BACKGROUND**

Watts alleges that, on January 27, 2022, she tripped and fell while walking down the stairs at Ashley River Apartments, where she is a resident. ECF No. 1-1, Compl. ¶¶ 2, 19. Watts contends that her fall was specifically caused because the handrail on the stairwell was not properly anchored to the wall and was thus left in a dangerous condition. See id. ¶¶ 2–3. Ashley River Apartments are allegedly owned by defendant Rivarel LLC ("Rivarel") and managed by defendant Hawthorne Residential Partners, LLC ("Hawthorne"). Id. ¶¶ 1, 7–10. Watts further asserts that, at the time of her fall, Buckley and Steinaway (collectively with Rivarel and Hawthorne, "defendants") were "Community Managers of Ashley River Apartments with responsibility for cleaning,

1

monitoring, and maintaining the Premises to ensure that they were safe, clean, and not dangerous to persons such as [Watts]." Id. ¶ 11.

Watts originally filed her complaint in the Charleston County Court of Common Pleas on May 29, 2024. ECF No. 1-1, Compl.; Watts v. Rivarel LLC, No. 2024-CP-10-02781 (Charleston Cnty. Ct. C.P. May 29, 2024). She asserts a single cause of action for negligence against all defendants. See generally Compl. On July 1, 2024, Hawthorne, Buckley, and Steinaway, with the consent of Rivarel, removed the case to this court. ECF No. 1 ¶¶ 26–27 & n.2. On July 3, 2024, Buckley and Steinaway moved to dismiss. ECF No. 6. On July 19, 2024, Watts moved to remand this case back to state court. ECF No. 9. On July 24, 2024, Watts responded in opposition to Buckley and Steinaway's motion to dismiss, ECF No. 11, to which Buckley and Steinaway replied on July 31, 2024, ECF No. 13. On August 2, 2024, Buckley, Hawthorne, and Steinaway responded in opposition to Watts's motion to remand. ECF No. 15. On August 27, 2024, the court held a hearing on the motion to remand. ECF No. 16. As such, the motion to remand is fully briefed and ripe for the court's review.[1]

## II.   STANDARD

Federal courts are of constitutionally limited jurisdiction. See U.S. Const. art. III, § 2. Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C.

---

[1] Though the motion to remand and motion to dismiss are both fully briefed, the court must consider the motion to remand first and may only consider the motion to dismiss if the court determines it has subject-matter jurisdiction. Dupree v. Fay Servicing, LLC, 392 F. Supp. 3d 639, 642 (E.D. Va. 2019); see also Burrell v. Bayer Corp., 918 F.3d 372, 379 (4th Cir. 2019). Because the court is ultimately granting the motion to remand, the motion to dismiss is rendered moot.

§ 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states, see 28 U.S.C. § 1332.

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

### III.   DISCUSSION

In their notice of removal, Steinaway, Buckley, and Hawthorne argue that removal is proper because there is diversity of citizenship between all properly joined parties. See generally ECF No. 1. Watts is a citizen of South Carolina. Id. ¶ 16; Compl. ¶ 4. Rivarel is a citizen of Delaware, and Hawthorne is a citizen of North Carolina. ECF No. 1 ¶¶ 17–18; see Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (explaining that, for purposes of diversity jurisdiction, an LLC's citizenship is determined by the citizenship of its members). Thus, if this case were between only these parties, there would be complete diversity of citizenship and

presumably no dispute as to the court's jurisdiction.[2]  The possible issue arises because both Buckley and Steinaway are, like Watts, citizens of South Carolina.  Compl. ¶¶ 15–16.

Defendants argue that removal is, nevertheless, proper under the fraudulent joinder doctrine.  ECF No. 1 ¶¶ 20–22.  To demonstrate fraudulent joinder, the removing party has the burden of proving "either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."  Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (alterations in original) (quoting Marshall, 6 F.3d at 232).  In this case, Buckley and Steinaway do not argue that there was "outright fraud" in Watts's pleadings.  ECF No. 15 at 5.  Instead, they base their fraudulent joinder argument on the assertion that there is no possibility Watts could recover against them.  See id.

In making this argument, Buckley and Steinaway face a heavy burden—they must show that Watts "cannot establish a claim even after resolving all issues of law and fact in [her] favor."  Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).  "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to

---

[2] Steinaway, Buckley, and Hawthorne filed the notice of removal on July 1, 2024. ECF No. 1. They claim Steinaway was served on June 3, 2024; Hawthorne was served on June 3, 2024; Buckley was served on June 20, 2024; and Rivarel was served on May 31, 2024. ECF No. 1 ¶¶ 5–8.  Thus, removal was timely as the notice of removal was filed within 30 days of Steinaway, Hawthorne, and Buckley being served, and Rivarel consents to removal.  See 28 U.S.C. § 1446(b)(2)(C) ("If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.").  Additionally, Watts conceded at the hearing that the amount in controversy requirement is satisfied.  ECF No. 16.

dismiss under Fed. R. Civ. P. 12(b)(6)." Id. at 424.  The court must remand if there is a "possibility of recovery." Id. at 425.  In making this determination, the best course is for the court to "accept the parties joined on the face of the complaint unless joinder is clearly improper." Id.

The court will begin by outlining what Watts must prove to ultimately prevail in this case and the parties' respective arguments on whether there is any possibly of her establishing her cause of action.  Watts's claims are based in negligence.  See Compl. ¶¶ 23–27.  To bring a successful negligence claim, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached this duty, (3) the defendant's breach proximately caused the plaintiff's injuries, and (4) the plaintiff suffered an injury.  Dorrell v. S.C. Dep't of Transp., 605 S.E.2d 12, 15 (S.C. 2004).  The parties' arguments in this case are generally focused on the first element—whether Buckley or Steinaway owed Watts a duty of care.  See ECF Nos. 9; 15.

Watts argues that she has sufficiently alleged that Buckley and Steinaway owed her a duty.  ECF No. 9.  The thrust of her argument is that courts have routinely found that store managers (or managers of similar retail locations) owe duties to customers on the premises.  See ECF No. 9 at 2–3; see also ECF No. 11 at 4–5 (asserting the same argument in opposition to Buckley and Steinaway's motion to dismiss).  Watts also argues that Buckley and Steinaway were responsible for maintenance at Ashely River Apartments.  ECF No. 9 at 5–9.  Watts supports this contention with a screenshot, which Watts attaches to her motion to remand, showing two messages Steinaway sent in response to negative reviews from residents of Ashley River Apartments.  ECF No. 9-1 at 1.  In these messages, Steinaway invites the reviewers to meet with her about various

maintenance issues. See id. Watts argues that, by doing so, Steinaway "is advertising that she has some control over maintenance duties at the complex." ECF No. 9 at 5. Watts goes on to assert that, by arguing Steinaway and Buckley were not responsible for maintenance issues, defendants are implying that there is another possible defendant who would be responsible for maintenance issues but whose identity defendants are attempting to conceal. Id. at 5–9.

In response, Buckley and Steinaway maintain that they did not owe Watts a duty. Their argument can be divided into two parts. They start with the contention that the cases Watts cites governing duties owed to customers are inapposite because the store owner/invitee relationship is fundamentally different than the landlord/tenant relationship. ECF No. 15 at 6–9; see also ECF No. 13 at 2–5 (asserting the same argument in support of their motion to dismiss).[3] Thus, Buckley and Steinaway argue that Watts's status on the property does not give rise to any duty owed to her. ECF No. 15 at 6–9.

Buckley and Steinaway next argue that Watts cannot establish a duty through some other alternative theory. Id. at 9–13. They specifically mention four alternative theories. First, they argue that the South Carolina Residential Landlord and Tenant Act ("RLTA"), S.C. Code Ann. § 27-40-10, et seq., does not create a duty because Buckley

---

[3] This is the same argument Buckley and Steinaway raise in their motion to dismiss. They contend that Watts cannot establish that she was owed a duty by either Buckley or Steinaway, rendering Watts's negligence claim fatally deficient. See generally ECF No. 6. They acknowledge that Watts pleaded that Buckley and Steinaway were "Community Managers" at the time of the accident, but they argue that she has not pleaded how this employment status gave them sufficient control over the property, such that they would owe a duty to Watts. Id. at 4 (citing Benjamin v. Wal-Mart Stores, Inc., 413 F. Supp. 2d 652, 655 (D.S.C. 2006)).

6

and Steinaway do not fall under the RLTA's definition of the term "landlord."[4]  ECF No. 15 at 9–10.  Second, they argue that they owe Watts no duty to maintain and/or repair the stairway under Watts's lease agreement because (a) Buckley and Steinaway were not parties to the lease or any contract with Watts, (b) the lease states that Buckley and Steinaway were not responsible for the lessor's obligations, and (c) Hawthorne's property management agreement with Rivarel states that Hawthorne's employees are not personally liable for any of Hawthorne's obligations.  Id. at 11.  Third, Buckley and Steinaway argue that they do not owe a duty based on property interests because neither of them had any property interest in Ashley River Apartments at the time of the alleged fall.  Id.  Fourth, they argue that they do not owe Watts any duties based on special circumstances, such as Watts relying on Buckley or Steinaway to maintain or repair the property, because Watts has not alleged that Buckley or Steinaway undertook to maintain or repair the property.  Id. at 12–13.  Buckley and Steinaway also note that, if they are dismissed from this case, Watts is not left without remedy because she can still sue Rivarel and Hawthorne.  Id. at 13.

     Under South Carolina law, "'[a] tortfeasor's duty arises from his relationship to the injured party.'  'It is essential [for] liability for negligence to attach that the parties shall have sustained a relationship recognized by law as the foundation of a duty of care.'"  Est. of Parrott v. Sandpiper Indep. & Assisted Living-Del., LLC, 2024 WL 3168764, at *5 (S.C. Ct. App. June 26, 2024) (second alteration in original) (citation and internal quotation marks omitted) (quoting Ravan v. Greenville Cnty., 434 S.E.2d 296,

---

[4] During the hearing, Watts made clear that she was not bringing a cause of action based on the RLTA.  ECF No. 16.

308 (S.C. Ct. App. 1993)). In premises liability cases, the nature and scope of the duty owed to the injured party is determined by that party's status on the land at the time of the injury. Singleton v. Sherer, 659 S.E.2d 196, 204 (S.C. Ct. App. 2008). A party is considered an invitee when that party "enters on the property of another by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or a benefit to the owner." Id. at 203 (quoting Sims v. Giles, 541 S.E.2d 857, 862 (S.C. Ct. App. 2001)). "A property owner owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from any breach of such duty." Sides v. Greenville Hosp. Sys., 607 S.E.2d 362, 365 (S.C. Ct. App. 2004). On the other hand, there is "a fundamental distinction between the relationships of landlord/tenant and store owner/invitee and innkeeper/guest." Cramer v. Balcor Prop. Mgmt., Inc., 441 S.E.2d 317, 318–19 (S.C. 1994); accord Cooke v. Allstate Mgmt. Corp., 741 F. Supp. 1205, 1213 (D.S.C. 1990) ("[The plaintiff's] argument rests on the assumption that the relationships of storeowner/invitee and innkeeper/guest are analogous to the relationship of landlord/tenant. This court is not convinced that the analogy is a sound one . . . ."); see also Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 832 (S.C. Ct. App. 1997).

In this case, it is not necessary for the court to determine whether Watts was owed a duty by virtue of her being a tenant. During the hearing, the parties agreed that, at the time of her alleged fall, Watts was an invitee because the stairway on which she was injured was in a common area. ECF No. 16. Based on Watts' status as an invitee, it is possible that a court might hold that Steinaway and Buckley owe her the same duty retail

store managers owe invitees on those respective properties.[5]  See, e.g., Jones v. Ringer, 2017 WL 5077870, at *4–5 (D.S.C. Nov. 6, 2017) (remanding case after determining store manager owed a duty to customers).  Making all assumptions of law and fact in Watts's favor, the court finds that there is a possibility of recovery against Steinaway and Buckley.  See Hartley, 187 F.3d at 424–25; see also Mulcahey, 29 F.3d at 151.  For this reason, the court grants the motion to remand, and because the court does not have jurisdiction to reach the pending motion to dismiss, the court finds the motion to dismiss as moot.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** Watts's motion to remand, **REMANDS** this case back to state court, and **FINDS AS MOOT** Buckley and Steinaway's motion to dismiss.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**September 11, 2024**
**Charleston, South Carolina**

---

[5] The court is not holding that tenants are considered invitees while in common areas, nor is it holding that apartment managers owe a duty to tenants under the common law.  The court is merely noting what a South Carolina court might possibly hold and is leaving these important questions of South Carolina law to the South Carolina courts.  See Hartley, 187 F.3d at 424–25; see also Mulcahey, 29 F.3d at 151.